THE AUSTRALIA.

FREEMAN *v.* THE AUSTRALIA, (OCEANIC STEAMSHIP Co., Claimant.)

*(District Court, N. D. California.   March 9, 1888.)*

PILOTS—HALF-PILOTAGE—SPEAKING VESSEL.

   Asking the master of a vessel which was about to sail, at the custom-house, if he desired a pilot, and an answer that he did not know, is not such a speaking of a ship and decline of services as entitles a pilot to "half-pilotage" under Pol. Code Cal. § 2466, providing that when a vessel is spoken to, outward or inward bound, and the services of a pilot declined, "half-pilotage" shall be paid.

In Admiralty.   Libel for half-pilotage.
P. D. Wigginton, (Lloyd & Wood, of counsel,) for libelant.
Milton Andros, (Charles Page, of counsel,) for claimant.

HOFFMAN, J.   Section 2466 of the Political Code of this state provides that when a vessel is spoken, inward or outward bound, and the services of a pilot are declined, "half pilotage shall be paid." The libelant claims to have spoken the steamer Australia outward-bound, and that the offer of his services was declined. The circumstances under which the alleged "speaking" of the ship occurred, and the offer of services declined, were as follows: On the 2d of March, 1887, while Capt. Houdlette, master of the Australia, was at the custom-house engaged in clearing his ship for a foreign voyage, he was approached by the libelant, a licensed pilot for this port, who inquired whether he wanted a pilot. To this Capt. Houdlette, according to the libelant's account, replied, "I don't know." Other witnesses testified that he added, "Come to the ship, and I will tell you." It is upon this conversation that libelant relies as constituting a "speaking of the ship," and a refusal by the master to accept his services. It is clearly proved that for many years a practice or usage has prevailed in this port under which the pilots have been accustomed to inquire at the custom-house, of masters of outgoing vessels, when clearing their ships, whether they will require the services of a pilot. This practice is convenient and unobjectionable when both parties agree to treat such an inquiry as equivalent to speaking the ship. But where a pilot claims a compensation under a statute for a constructive service, no practice or custom, however inveterate, can absolve him from the duty of bringing himself within the requirements of the law. To say that an inquiry at the custom-house, such as that made in this case, constitutes "a speaking of the ship" within the meaning of the statute, would seem to be an abuse of terms. The law requires not only that the vessel be spoken, but also that the services of the pilot be declined. In this case the master did not decline the pilot's offer, if offer it can be called. He merely replied that he did not then know whether or not he would require his services. Other witnesses testified, as I have stated, that he told the pilot to come to the ship for a definite and final answer. I think this discrepancy is immaterial. On either statement it is clear that his services were not declined. I do not mean to say that if the master had informed the pilot in positive and unequivocal terms that he would not require or accept his services, and that he intended to proceed forthwith to sea without a pilot, this announcement might not be accepted as a waiver of any irregularity in the offer of service, and as relieving the pilot of the duty of making a more formal offer of services which he was assured would be declined. But no such response was made by the master when the vessel was, as is said, "spoken at the custom-house." The master merely informed the pilot that he had not determined whether or not he would take a pilot, and, as he says, directed him to come to the ship for a final answer. It seems to me plain that, to entitle the pilot to the compensation allowed by law, he should have brought himself within the terms of the statute by making a formal offer of his services when the ship was about to proceed to sea, and by procuring from the master a distinct refusal to accept them.